PEOPLE v KING

Docket No. 160499. Submitted December 6, 1995, at Detroit. Decided
    February 2, 1996, at 9:00 A.M. Leave to appeal sought.

    Bradford J. King was convicted by a jury in the Calhoun Circuit
        Court, Conrad J. Sindt, J., of first-degree murder and possession
        of a firearm during the commission of a felony. The defendant
        appealed.

    The Court of Appeals held: ·

    1. The trial court did not abuse its discretion by denying the
defendant's motion for a change of venue based on pretrial
publicity. The defendant failed to show that there was a pat-
tern of strong community feeling against him and that the
publicity was so extensive and inflammatory that jurors could
not remain impartial when exposed to it, that the jury was
actually prejudiced, or that the atmosphere was such as would
create a probability of prejudice.

    2. The trial court did not abuse its discretion by failing to
resolve motions in limine before voir dire. The trial court's
action did not constitute a limitation on voir dire.

    3. The trial court did not abuse its discretion by refusing to
grant the defendant additional peremptory challenges of jurors.
The publicity was not good cause for additional challenges, and
the prospective jurors who had opinions concerning the defen-
dant's guilt were dismissed for cause. The trial court also did
not abuse its discretion by denying the defendant's motion to
sequester the jury.

    4. The trial court's denial of the defendant's motion for a
mistrial based on certain spectators' wearing of a button depict-
ing the victim was not so grossly in error as to deprive the
defendant of a fair trial or amount to a miscarriage of justice.

    5. The trial court did not abuse its discretion by admitting
evidence concerning the use of a tracking dog. The prosecution
established an adequate foundation for admission of the evi-
dence by showing that the trail had not become so stale or
contaminated as to be beyond the dog's competency to follow it.
The fact that police officers had been in a loft before the dog
was given access to it was relevant to the weight rather than
the admissibility of the evidence.

    6. The defendant was not denied a fair trial, and the trial

court did not abuse its discretion in denying the defendant's motion for a mistrial, with respect to the prosecution's use of a chart that referred to meetings between the defendant and certain women. The evidence was not offered to show the defendant's criminal propensity and action in conformity therewith, but as proof of marital discord as a motive for murder.

7. The trial court did not err in denying the defendant's motion for a mistrial based on the prosecution's reference during opening statement to the likelihood that a threatening note received by the victim was sent by the defendant. The reference was solitary, the trial court ordered the prosecution to abstain from further references and cautioned the jury that statements by counsel were not evidence, and the prosecution acted in good faith.

8. The trial court did not abuse its discretion by denying the defendant's motion for a mistrial based on a prosecution witness' unresponsive answer to a question by the prosecution, in which answer the witness volunteered a hearsay statement attributable to the victim. The challenged statement was not sufficiently prejudicial to the defendant to warrant a mistrial.

9. The trial court did not abuse its discretion by denying the defendant's motion for a mistrial based on a reference to a polygraph examination in a tape-recorded police interview of the defendant that was played for the jury. The reference was not a ground for a mistrial because the defendant's objection was not timely, the reference was brief and did not indicate whether a polygraph test actually had been taken, and the trial court instructed the jury to disregard all references to a polygraph test.

10. The trial court did not abuse its discretion in admitting hearsay statements attributable to the victim concerning her fears. The statements were relevant to the prosecution's theory of the case.

11. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial based on alleged violations of a sequestration order relating to witnesses. The defendant failed to show that he was prejudiced by such violations.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Jon R. Sahli,* Prosecuting Attorney, and *Nancy Mullett,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for the defendant on appeal.

Before: MICHAEL J. KELLY, P.J., and REILLY and E. SOSNICK,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to consecutive prison terms of two years for the felony-firearm conviction and life imprisonment without possibility of parole for the murder conviction. He appeals as of right. We affirm.

Defendant first contends that the trial court abused its discretion when it denied his motion for a change of venue based on pretrial publicity. We disagree. All of the seated jurors who were aware of media coverage indicated under oath that they could decide the case on the basis of what was presented in court and would follow the court's instruction regarding presumption of innocence. All of the seated jurors denied having an opinion regarding defendant's guilt. The "initial presumption is that they are honoring their oath and are being truthful." *People v DeLisle,* 202 Mich App 658, 663; 509 NW2d 885 (1993).

Here, ninety-five potential jurors were interviewed. As in *DeLisle,* less than one-third were excused for cause because of bias against defendant. Three were excused because they believed that defendant was not guilty. None of the seated jurors indicated knowledge of matters beyond the general facts of the case, certainly not as damag-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing as the defendant's inadmissible confession in *DeLisle*.

In our opinion, defendant has not shown that there was "a pattern of strong community feeling against him and that the publicity is so extensive and inflammatory that jurors could not remain impartial when exposed to it," "that the jury was actually prejudiced," or that "the atmosphere was such as would create a probability of prejudice." *People v Passeno*, 195 Mich App 91, 98; 489 NW2d 152 (1992). Therefore, the court did not abuse its discretion when it denied defendant's motion for a change of venue.

Defendant next argues that the trial court abused its discretion by failing to resolve motions in limine before voir dire. We do not agree with defendant's assertion that the court's action amounted to a limitation on voir dire as occurred in *People v Tyburski*, 445 Mich 606; 518 NW2d 441 (1994). We find no abuse of discretion.

We also do not believe that the trial court abused its discretion by refusing to grant defendant additional peremptory challenges under MCR 6.412(E)(2). The amount of publicity in this case was not good cause for additional peremptory challenges because the trial court's assessment that the publicity was not unfairly biased against defendant has not been proven clearly erroneous despite defense counsel's conclusory claims that the publicity was "overwhelmingly negative." Although there was wide publicity, those prospective jurors who had opinions concerning defendant's guilt were dismissed for cause. See *People v Lee*, 212 Mich App 228, 252; 537 NW2d 233 (1995). In addition, we find no abuse of discretion in the court's refusal of defendant's motion to sequester the jury.

The trial court's denial of defendant's motion for

a mistrial because certain spectators at the trial wore buttons depicting the victim was not "so grossly in error as to deprive [him] of a fair trial or to amount to a miscarriage of justice." *People v McAlister,* 203 Mich App 495, 503; 513 NW2d 431 (1994). We are not persuaded by defendant's argument that the wearing of the buttons, which were less than three inches in diameter, was equivalent to communication with the jury or that they could have influenced the panel. In fact, the buttons were not brought to the court's attention until the twelfth day of trial, and were thereafter ordered excluded. It is not even clear that the buttons were worn in the courtroom more than one day. The court's ruling was wholly appropriate.

Having rejected each of the above arguments individually, we also conclude that the cumulative effect of the alleged errors did not deny defendant the right to due process and to an impartial jury.

Defendant next contends that the trial court abused its discretion by admitting evidence concerning the use of a tracking dog. We agree with the trial court that an adequate foundation was established. Contrary to defendant's argument, the prosecution was not required to show that the trail was fresh and uncontaminated, but rather that "the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it." *People v Harper,* 43 Mich App 500, 508; 204 NW2d 263 (1972). The fact that police officers had been in the loft before the dog was given access is relevant to the weight rather than the admissibility of the evidence.

Defendant next argues that he was denied a fair trial by the prosecutor's use of a chart that referred to meetings between defendant and other female students and former students as "dates" and by the presentation of evidence from which

the jury could infer the existence of extramarital sexual relationships. We note that the trial court's ruling that evidence concerning alleged affairs was inadmissible under MRE 404(b) was based on the court's reading of *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982). As the Supreme Court explained in *People v VanderVliet,* 444 Mich 52, 65-66; 508 NW2d 114 (1993), "the *Golochowicz* 'test' does not set the standard for the admissibility of other acts evidence." The evidence concerning alleged affairs was not being offered to "show the criminal propensity of an individual to establish that he acted in conformity therewith," *VanderVliet* at 65, but rather as proof of marital discord as a motive for murder. See *People v Fisher,* 449 Mich 441, 453; 537 NW2d 577 (1995). Therefore, it appears that the evidence would have been admissible under *VanderVliet.* In any event, we do not believe that the prosecutor's actions denied defendant a fair trial or that the court abused its discretion in denying defendant's motion for a mistrial because of the chart.

Defendant also contends that the trial court erred in denying his motions for a mistrial during the prosecutor's opening statement. During the opening statement, the prosecutor discussed a threatening note that the victim received and stated:

> Now, probably you're all familiar with these types of notes from watching television programs and movies. And [sic, in?] the television programs and in the movies these crazed killers send these notes to the victim. But the experts know one thing, experience shows that these notes are either from family members or from the Defendant himself.

After defense counsel objected, the court ordered the prosecutor to abstain from further reference to such evidence and later instructed the jury that statements of the lawyers were not evidence. The prosecutor tried to have expert testimony regarding this issue admitted, but the trial court held that the prosecution did not show that the testimony satisfied the *Davis/Frye*[1] test. We believe that the prosecutor acted in good faith and that the isolated reference to this proposed evidence did not deny defendant a fair trial. *People v Johnson,* 187 Mich App 621, 626; 468 NW2d 307 (1991).

We also do not believe that the trial court abused its discretion when it denied defendant's motion for a mistrial following an unresponsive answer from a prosecution witness. The prosecutor asked, "With reference to the letter specifically, what did Mrs. King say about her concern?" The witness responded:

> She just told me that she was really scared that, you know, that she didn't know, you know. She was just really scared about them.
> Because obviously she explained all these, you know, the reason why that, you know, she had— the kids couldn't come over and play in the snow, you know.
> Because I was like you, Diane. You know, did they find out who did this. And at one time she said well, *I just thought Brad—to the phone call— Brad was just playing a sick joke,* and we laughed about that. [Emphasis added.]
> But these letters and, you know, she was really scared and she told me about a break-in at the house.

Defendant later asked for a mistrial on the basis that the prosecutor "knowingly, willfully and in-

---

[1] *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *Frye v United States,* 54 App DC 46; 293 F 1013 (1923).

tentionally pursued a line of questioning that was outside this Court's ruling regarding the hearsay of Diane King." We agree with the trial court's explanation regarding why the volunteered information was not grounds for a mistrial:

> There is no evidence in the statement itself that it was anything but an offhand comment by Diane King, and apparently by virtue of this witness and Diane King laughing about it, Diane King did not describe [sic, ascribe] any validity to the original conclusion she may have entertained for however brief a moment.
>
> So, I see no grounds for a mistrial. The evidence I find is not sufficiently prejudicial to the Defendant in that it's apparent that no serious thought was entertained as to the validity of the comment.

Defendant next argues that he was denied a fair trial because a tape-recorded reference to a police request that he take a polygraph examination was not deleted from the tape before it was played for the jury. The reference occurred during police questioning of defendant:

> [*Detective*:] Okay. Let me ask you this. Let me ask you this. Would you agree to a polygraph test? I got to have some answers. I got to have some logic in this thing. Something has got to make sense to me, this doesn't.
>
> [*Defendant*:] Doesn't make sense to me either, Jack, and it's coming out of my mouth.

It is undisputed that the defense had a transcript of the tape before the tape was played and did not object to the reference until after the tape was played. Having considered the factors set forth in *People v Rocha*, 110 Mich App 1, 8-9; 312 NW2d 657 (1981), we conclude that the reference was not a ground for a mistrial because defendant's objection was not timely, the reference was brief and

did not indicate whether a polygraph test was actually taken, and the court instructed the jury to disregard "any and all reference made to the term polygraph or polygraph test."

Defendant also contends that the trial court abused its discretion by admitting evidence of the victim's statements concerning her fears. According to defendant's argument, the statements were hearsay, and MRE 803(3) did not apply because the victim's state of mind was not in issue. We agree with the trial court that the victim's fears as a result of the letter and phone calls explained why she adopted certain precautions when she arrived at her house. Her habits in this regard were relevant to the prosecution's theory of the case that the victim would not have gotten out of her car when she arrived at home without waiting for defendant. Defendant's position, which relies on *People v White,* 401 Mich 482; 257 NW2d 912 (1977), for the proposition that the decedent's state of mind must itself be "at issue," was not the approach taken by the Supreme Court in *Fisher, supra.* We find no abuse of discretion.

Finally, we decline defendant's invitation to impose a duty on the trial court to order sua sponte the questioning of witnesses who may have violated the sequestration order by observing media coverage of the trial. Unlike in *People v Cutler,* 73 Mich App 313, 316; 251 NW2d 303 (1977), a case cited by defendant, he has not raised "arguable questions of prejudice." See also *People v Solak,* 146 Mich App 659, 669; 382 NW2d 495 (1985) ("A defendant who complains on appeal that a witness violated the lower court's sequestration order must demonstrate that prejudice resulted."). We believe that the trial court took adequate measures to control the trial proceedings and that a mistrial was not warranted.

Affirmed.