PEOPLE v ORTIZ

Docket No. 224331. Submitted November 6, 2001, at Lansing. Decided November 30, 2001. Approved for publication January 18, 2002, at 9:20 A.M. Leave to appeal sought.

Domingo Ortiz was convicted by a jury in the Jackson Circuit Court, Edward J. Grant, J., of premeditated murder for the killing of his ex-wife. The defendant appealed.

The Court of Appeals *held*:

1. There was sufficient evidence to support the conviction of premeditated murder. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that the defendant intentionally killed the victim and that he did so with premeditation and deliberation. The jury, from evidence indicating that the victim died from asphyxiation, that she did not have contact lenses or glasses with her when she died, that she had ingested Gamma Hydroxybutyrate (GHB), and that she bore several wounds on her body that were not evident to guests at her home hours before she died, could infer that the victim was intentionally killed and that an automobile accident was staged to conceal the murder. Evidence tying the defendant to the murder included a gallon of milk found in the victim's automobile and determined by the police to have been bought by the defendant at a store more than twenty miles from the victim's home, semen with the defendant's DNA found on the victim's clothing, and the defendant's sandals found in the victim's bedroom. Premeditation and deliberation could be inferred from the victim's statements to at least two witnesses that the defendant had threatened to kill her in such a manner that he would not get caught, from the defendant's statement to a cellmate about how the defendant could kill the victim without being caught, from the circumstances of the crime itself, and from the tumultuous relationship and divorce of the victim and the defendant.

2. Evidence of the defendant's sexual misconduct with two women was properly admitted pursuant to MRE 404(b), which governs evidence of other crimes, wrongs, or acts. The prosecution offered the evidence for a proper purpose, the evidence was logically relevant to the case, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

The prosecution argued that the other acts evidence supported the prosecution's theory that the defendant had a pattern of sexually forcing himself on women and that the victim knew of the defendant's propensities and, therefore, was afraid of him and would not have agreed to consensual sexual relations with him.

3. Statements made by the victim before her death were properly admitted pursuant to MRE 803(3), the state of mind exception to the hearsay rule. The evidence was relevant to issues of motive, deliberation, premeditation, and whether the victim would have engaged in consensual sexual relations with the defendant.

4. The admission of the victim's statements into evidence did not violate the defendant's rights under the Confrontation Clauses of the federal and state constitutions. The statements fell within a firmly rooted exception to the hearsay rule and presumptively have sufficient indicia of reliability to fulfill Confrontation Clause guarantees.

5. The defendant's claims of deficient cautionary jury instructions regarding the other acts evidence and the victim's statements that were admitted as then existing state of mind evidence were affirmatively waived by the defendant's specifically indicating to the trial court that he had no objections to the instructions that were given.

6. The defendant's claim that his counsel was ineffective because counsel failed to object to the claimed deficient cautionary instructions is without merit. Although counsel's failure to object or request better cautionary instructions may be deemed to have fallen below an objective standard of reasonableness, the defendant failed to demonstrate that the result of the proceedings would have been different but for counsel's performance with regard to the cautionary instructions.

7. The trial court erroneously instructed the jury that it could consider the defendant's prior fourth-degree criminal sexual conduct conviction when determining his credibility. Although MRE 609 permits impeachment by evidence of a prior conviction in certain, limited circumstances, a criminal sexual conduct conviction does not fall within MRE 609. The error is harmless, however, and does not require reversal because it was not outcome determinative. The defendant's credibility was compromised by more than just the erroneous jury instruction, and the evidence of the defendant's guilt was substantial.

8. The defendant's claim that the prosecutor made numerous improper statements during closing and rebuttal arguments is without merit. The defendant failed to object to any of these statements. Absent an objection or a request for a curative instruction, the Court of Appeals will not review alleged prosecutorial misconduct unless the misconduct is sufficiently egregious that no cura-

tive instruction would counteract the prejudice to the defendant or unless manifest injustice would result from the failure to review the alleged misconduct. Neither situation warranting review exists in this case.

Affirmed.

1. CRIMINAL LAW — SUFFICIENCY OF EVIDENCE — APPEAL.

The Court of Appeals, in reviewing the sufficiency of the evidence in a criminal trial that resulted in conviction, views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION.

The prosecution in a first-degree murder trial must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate; premeditation and deliberation may be inferred from circumstances surrounding the killing (MCL 750.316[1][a]).

3. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant under MRE 402 as enforced through MRE 104(b), and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

4. EVIDENCE — HEARSAY — THEN EXISTING STATE OF MIND — MURDER VICTIMS.

Statements made by murder victims before their deaths regarding their fears and plans are not excluded by the hearsay rule (MRE 803[3]).

5. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking to establish a claim of ineffective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different.

6. CRIMINAL LAW — APPEAL — NONCONSTITUTIONAL ERRORS.

A defendant attempting to overcome a presumption that a preserved, nonconstitutional error is harmless must persuade a reviewing court that it is more probable than not that the error was outcome determinative.

7. CRIMINAL LAW — PROSECUTORIAL MISCONDUCT — JURY ARGUMENTS — APPEAL.

Allegations of prosecutorial misconduct during arguments to a jury in a criminal trial will not be reviewed by the Court of Appeals in the

absence of an objection or a request for a curative instruction at trial unless the misconduct is sufficiently egregious that no curative instruction would counteract the prejudice to the defendant or unless manifest injustice would result from failure to review the alleged misconduct.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Martin J. Beres*, for the defendant on appeal.

Before: FITZGERALD, P.J., and HOEKSTRA and MARKEY, JJ.

PER CURIAM. Defendant was convicted of first-degree, premeditated murder, MCL 750.316(1)(a), for the murder of his ex-wife, Jennifer Ortiz. The trial court sentenced him to mandatory life in prison without the possibility of parole. Defendant appeals as of right. We affirm.

I

Defendant first argues that there was insufficient evidence to sustain his conviction. We disagree. We "view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997), citing *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). All conflicts with regard to the evidence are resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). Further, we will not interfere with the jury's role of determining the

weight of the evidence or the credibility of witnesses. *Wolfe, supra; Terry, supra.*

In order to convict defendant of first-degree, premeditated murder, the prosecution was required to prove that defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). "The elements of premeditation and deliberation may be inferred from circumstances surrounding the killing." *Id.* Minimal circumstantial evidence is sufficient to prove an actor's state of mind. *People v Bowers*, 136 Mich App 284, 297; 356 NW2d 618 (1984). See also *People v Plummer*, 229 Mich App 293, 300-302; 581 NW2d 753 (1998).

The evidence in this case, viewed in a light most favorable to the prosecution, was sufficient to support the determination that the essential elements of the crime were proved beyond a reasonable doubt. There was evidence supporting an inference that the victim was intentionally killed. There was testimony that the victim died of asphyxiation by smothering or chest compression, and that her death was a homicide. The fact that the victim did not have her contact lenses or glasses with her at the time of her death negated the suggestion that she intentionally drove away from her home on the evening of her death. Further, there was evidence that she had ingested Gamma Hydroxybutrate (GHB) and had several wounds on her body, which she did not have when her guests left her cookout before 11:00 P.M.

There was also evidence tying defendant directly to the victim on the night of the victim's death. The jury could have found from the evidence that defendant purchased the gallon of milk that was found in the back of the victim's automobile. The store clerk at

Speedway identified defendant as buying the milk after 11:00 P.M. on July 11, 1998. A detective conducted an extensive search for another source of the Melody Farms gallon of whole milk and could not find any other source. The Speedway was more than twenty miles away from the victim's home. An automobile similar to defendant's was observed after midnight, speeding down a street by the victim's house. More importantly, fresh seminal fluid containing defendant's DNA was found on the victim's clothing. Further, defendant's sandals, which he wore on July 11, 1998, were found in the victim's bedroom. They were not in the bedroom before the victim's guests left her cookout on that night. This evidence was sufficient evidence from which to conclude that defendant was responsible for the murder and staged an "accident."

Finally, there was sufficient evidence that the victim's death was premeditated by defendant. The victim told at least two witnesses that defendant had threatened to kill her in such a manner that he would not get caught. More importantly, defendant's former cellmate testified that defendant talked about killing the victim and made statements about how he could do so. It is a well-settled principle that "[i]n reviewing a sufficiency argument, this Court must not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Stiller*, 242 Mich App 38, 42; 617 NW2d 697 (2000). The jury could have found the testimony credible, and we will not interfere with that determination. Further, the circumstances of the crime itself support premeditation. The "accident" was carefully staged to make it appear that the victim ran out of milk, went to buy some, and drove off the road. Further, defendant and

the victim had a tumultuous relationship that ended in divorce. He was irritated that she received the home in the divorce settlement. Premeditation and deliberation were properly inferred from the facts.

II

Defendant next argues that the admission of evidence of his sexual misconduct with two women was improperly admitted pursuant to MRE 404(b). We disagree.

We first note that defendant makes an incorrect legal argument that the test set out in *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982), should have been followed in this case. The *Golochowicz* test is utilized where other acts evidence is offered to show identification through modus operandi. *People v VanderVliet*, 444 Mich 52, 66-67; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The case at hand is not a case where the prosecutor sought to *identify defendant through the use of similar acts evidence* that shows a specific modus operandi. The analysis does not apply.

MRE 404(b) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *VanderVliet, supra* at 55, the Court clarified the test to be utilized to determine the admissibility of other bad acts evidence:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

In *People v Crawford,* 458 Mich 376, 385; 582 NW2d 785 (1998), the Court addressed the test set forth in *VanderVliet* and stated:

> Under this formulation, the prosecution bears the initial burden of establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b). Where the only relevance is to character or the defendant's propensity to commit the crime, the evidence must be excluded. Where, however, the evidence also tends to prove some fact other than character, admissibility depends on whether its probative value outweighs its prejudicial effect, taking into account the efficacy of a limiting instruction in cushioning the prejudicial effect of the evidence.

The prosecution must also demonstrate that the evidence is relevant. *Crawford, supra* at 387-388.

> Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence. . . . The logical relationship between the proffered evidence and the ultimate fact sought to be proven must be closely scrutinized. [*Id.* (citation omitted).]

In addition, the offered evidence "truly must be probative of something *other* than the defendant's pro-

pensity to commit the crime." *Id.* at 390 (emphasis in original). "If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded." *Id.*

Here, the prosecutor offered the evidence for a proper purpose and the evidence was logically relevant to the case. A proper purpose is a noncharacter purpose, one that does not risk impermissible inferences of character to conduct. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). The list of proper purposes articulated in MRE 404(b) is not exclusive. *Id.* In this case, the prosecutor argued that the other bad acts evidence was relevant to support the prosecutor's argument that defendant had a modus operandi or pattern of sexually forcing himself on women, that the victim knew of defendant's propensities and, therefore, was afraid of him, and, thus, she would not have agreed to have consensual sexual relations with him, a point that was very important in the case. In *People v Knapp*, 244 Mich App 361, 380; 624 NW2d 227 (2001), this Court indicated that other bad acts evidence may be relevant to rebut a defendant's theory with regard to the case against him. Although inarticulate, the trial court recognized that the evidence was relevant to rebut the defendant's theory of consensual sexual relations. The evidence was offered for a purpose other than to simply establish defendant's bad character or to argue his propensity to commit crime.

The evidence was also logically relevant. If defendant's DNA was on the victim's clothing for legitimate reasons, the direct evidence tying defendant to the victim on the night of the crime was less probative. Further, the evidence was logically relevant to support that defendant had a motive and opportunity to

kill the victim. The victim's divorce attorney testified that the victim refused to discuss reconciling with defendant because of his sexual deviance. Further, defendant's actions with regard to one of the other women landed him in jail in November 1997, shortly after the victim filed for divorce. Defendant was not released from tether until ten days before the victim's death. Thus, the one criminal sexual assault explained the opportunity issue to the jury, i.e., why, if defendant wanted to kill the victim, he did not do so earlier. The evidence had relevance "distinct from the impermissible character inference," *Crawford, supra* at 397.

The probative value of the evidence was also not substantially outweighed by the danger of unfair prejudice.

> Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. In the context of prior bad acts, that danger is prevalent. When a juror learns that a defendant has previously committed the same crime as that for which he is on trial, the risk is severe that the juror will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again." Because prior acts evidence carries with it a high risk of confusion and misuse, there is a heightened need for the careful application of the principles set forth in MRE 403. [*Crawford, supra* at 398 (citation omitted).]

The issue whether the seminal fluid found on the victim's blouse was deposited there by defendant during consensual relations or otherwise was of significant importance. There was minimal danger that the jury would make the impermissible inference that because

defendant previously had improperly grabbed two women, he must have killed his ex-wife. The crime for which defendant was on trial was not the same as his previous crimes. This greatly lessened the danger that the jury would conclude that "if he did it before, he probably did it again."

### III

Defendant next argues that the trial court improperly admitted numerous statements made by the victim before her death. We disagree.

The prosecution moved to admit statements made by the victim, including statements that the victim was afraid of defendant, that she thought defendant was stalking her, that defendant physically assaulted her, that defendant threatened to kill her, that defendant threatened to kill her in such a manner that no one would find out that he did it, that defendant warned the victim that her life was like the O.J. Simpson story, that the victim was changing her will, that the victim anticipated her death, that the victim was going to try to enforce the child support order, that the victim did not want to get back together with defendant, that the victim made arrangements to be away from home on the weekend of July 4, 1998, specifically because she did not want to be around when defendant came to her home to pick up his Grand Am, and that after defendant broke into her house in October 1998, she changed the locks. The trial court ruled that the statements were admissible under MRE 803(3), the state of mind exception to the hearsay rule.

In *People v King*, 215 Mich App 301, 309; 544 NW2d 765 (1996), a first-degree murder case, this Court

rejected an argument that statements of the victim regarding her fears were inadmissible under MRE 803(3):

Defendant also contends that the trial court abused its discretion by admitting evidence of the victim's statements concerning her fears. According to defendant's argument, the statements were hearsay, and MRE 803(3) did not apply because the victim's state of mind was not in issue. We agree with the trial court that the victim's fears as a result of the letter and phone calls explained why she adopted certain precautions when she arrived at her house. Her habits in this regard were relevant to the prosecution's theory of the case that the victim would not have gotten out of her car when she arrived at home without waiting for defendant. Defendant's position, which relies on *People v White*, 401 Mich 482; 257 NW2d 912 (1977), for the proposition that the decedent's state of mind must itself be "at issue," was not the approach taken by the Supreme Court in [*People v Fisher*, 449 Mich 441, 453; 537 NW2d 577 (1995)] *supra*. We find no abuse of discretion. [*King, supra* at 309.]

In *People v Fisher*, 449 Mich 441, 448-450; 537 NW2d 577 (1995), the Court stated:

The trial judge stated that the parties should develop a list of oral or written statements made by the victim that were known to the defendant. The court ruled that these statements were not hearsay and that it would admit those statements that are especially relevant to the issues of motive and the elements of premeditation and deliberation. The trial court also ruled that it would also admit certain statements made by the victim that were not known to the defendant:

"The people's intent to present certain other material not known to the Defendant but which can be properly considered to be admissible as non-hearsay circumstantial evidence as to the existence and extent of marital discord which is admissible as proof of a motive for Defendant to kill his wife will also be permitted at the trial. That material described on page 29, Sec. II and thereafter will be allowed

it being the impression of the court that they are not violative of the Supreme Court's ruling."

We agree with the conclusion reached by the trial court. It is well accepted that evidence that demonstrates an individual's state of mind will not be precluded by the hearsay rule. Several legal scholars have commented on the non-hearsay use of such evidence:

"Wherever an utterance is offered [into] evidence [for] the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned." [6 Wigmore, Evidence (Chadbourn rev), § 1789, p 314. Emphasis added.]

Likewise, in 4 Weinstein, Evidence, ¶ 801(c)[01], pp 801-94 to 801-96:

"An utterance or a writing may be admitted to show the effect on the hearer or reader when this effect is relevant. The policies underlying the hearsay rule do not apply because the utterance is not being offered to prove the truth or falsity of the matter asserted."

Specifically, statements by murder victims regarding their plans and feelings have been admitted as hearsay exceptions in a number of jurisdictions. In *United States v Donley*, 878 F2d 735, 737-739 (CA 3, 1989), cert den 494 US 1058 (1990), a statement by the victim's wife that she intended to move out of the apartment and separate from the defendant-husband was found admissible to show marital discord and motive. Likewise, in *Whitmire v State*, 789 SW2d 366 (Tex App, 1990), statements of the decedent-husband that he wanted to end the marriage with the defendant-wife were found admissible. See also *United States v Hartmann*, 958 F2d 774, 782 (CA 7, 1992), in which statements made by the victim-husband about the "dismal state of his marriage" to the defendant-wife, his removal of her as beneficiary from his life insurance policy, and statements of his fear of being killed by the defendant-wife and her codefendant lover all were found admissible under a state of mind exception to the hearsay rule.

In the case at hand, marital discord, motive, and premeditation are all at issue. Thus, the statements of the victim-

wife are admissible to show the effect they had on the defendant-husband. This testimony will not offend the hearsay rule because it does not constitute hearsay.

The trial court's ruling in this case was not an abuse of discretion. Evidence of the victim's state of mind, evidence of the victim's plans, which demonstrated motive (the ending of the marriage and the tension between the victim and defendant), and evidence of statements that defendant made to cause the victim fear were admissible under MRE 803(3). They were relevant to numerous issues in the case, including the issues of motive, deliberation, and premeditation and the issue whether the victim would have engaged in consensual sexual relations with defendant the week before her death.

On appeal, defendant also argues that the Confrontation Clauses of both the United States Constitution and the Michigan Constitution were violated by the admission of the evidence of the victim's statements. Defendant claims that the trial court should have considered the totality of the circumstances surrounding the statements to determine if they were sufficiently reliable to meet the guarantees of the Confrontation Clauses. This issue is unpreserved because it was not raised below and, therefore, is reviewed only for plain error. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999). There was no plain error.

Where statements fall within a firmly rooted exception to the hearsay rule, they presumptively have sufficient indicia of reliability to fulfill Confrontation Clause guarantees. *People v Lee*, 243 Mich App 163, 171-178; 622 NW2d 71 (2000). Because the statements at issue fell within a firmly rooted exception to the hearsay rule, MRE 803(3), the requisite indicia of reli-

ability was present. Thus, as a matter of law, the admission of the evidence did not violate defendant's right to confront the witnesses against him.

IV

Defendant argues that the trial court gave deficient cautionary instructions to the jury with respect to the MRE 404(b) evidence and the evidence of the victim's statements that were admitted under MRE 803(3). These issues were waived. *People v Carter*, 462 Mich 206, 214-219; 612 NW2d 144 (2000). Defendant affirmatively waived any errors when he specifically indicated to the trial court that he had no objections to the instructions *as given*. Because any objections were waived, there are no errors to review. *Id.* at 216.

Defendant also argues that his counsel was ineffective for failing to object to the deficient cautionary instructions. In order to establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

In this case, defense counsel's conduct in failing to object or request better cautionary instructions may be deemed to have fallen below an objective standard of reasonableness. However, defendant does not affirmatively demonstrate that, but for his counsel's

performance with regard to the two cautionary instructions, the result of the proceedings would have been different. The instructions did not pertain to basic and controlling issues in the case and cautionary instructions, although advisable are not mandatory. Defendant's right to a fair trial was not prejudiced by his counsel's failure to object.

V

Defendant further argues that the trial court erroneously instructed the jury that it could consider his prior fourth-degree criminal sexual conduct conviction when determining his credibility. This issue is preserved and we agree that the trial court's instruction was erroneous. MRE 609 permits impeachment of credibility by evidence of a prior conviction in certain, limited circumstances. A criminal sexual conduct conviction does not fall within MRE 609. Reversal is not, however, warranted. "In order to overcome a presumption that a preserved, nonconstitutional error is harmless, a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative." *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000), citing *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). In making this determination, we focus on the nature of the error in light of the weight and strength of the untainted evidence. *Elston, supra*. We find that defendant cannot show that the error was outcome determinative. The evidence of defendant's guilt was substantial. In addition, defendant's credibility was severely compromised by the myriad different stories he told throughout the inves-

tigation and trial. His credibility was not compromised only by the erroneous jury instruction.

VI

Finally, defendant argues that the prosecutor made numerous, improper statements during her closing and rebuttal arguments. Defendant failed to object to any of these statements. "Absent an objection or a request for a curative instruction, this Court will not review alleged prosecutorial misconduct unless the misconduct is sufficiently egregious that no curative instruction would counteract the prejudice to defendant or unless manifest injustice would result from failure to review the alleged misconduct." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Further, unpreserved errors are reviewed under the plain error rule. *Carines, supra* at 763, 774.

We have reviewed the challenged comments and find that appellate relief is not warranted. There is no error apparent in the challenged comments.

Affirmed.