# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JHERI EDRECE CAMPBELL,

      Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 319300
Wayne Circuit Court
LC No. 12-011652-FC

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of four counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c) (sexual penetration under circumstances involving the commission of kidnapping) and (f) (personal injury and force or coercion), and assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent sentences of 40 to 60 years' imprisonment for each first-degree CSC conviction and 40 to 60 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction. We affirm.

## I. FAILURE TO REMOVE A JUROR OR GRANT A MISTRIAL

First, defendant contends that the trial court abused its discretion in refusing to remove Juror #5 from the jury; removing the juror would have necessitated a mistrial. According to defendant, the jury, and particularly Juror #5, was tainted by statements made in the presence of several jurors. We disagree that the trial court abused its discretion.

"The trial court's decision whether to remove a juror is reviewed for an abuse of discretion." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Similarly, a trial court's denial of a mistrial is reviewed for an abuse of discretion. *People v Lugo*, 214 Mich App 699, 704; 542 NW2d 921 (1995). "An abuse of discretion occurs when [the] trial court's decision is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

-1-

On the second day of trial, the trial court indicated that it had received a note from Juror #1 stating that the day before, when a number of jurors returned from lunch, a woman who was removed from the courtroom later that day was sitting in the hallway talking about the case.[1] The trial court stated:

> He indicates there were specific discussion [sic] and I quote, "I understand her not leaving because she's frozen in fear." Unquote. And quote, "That even happened to me but I at least made the phone call then and there." Unquote. And then he also heard her say quote, "I feel bad because that's my sister's son but I told him if he done it then he deserves what's coming to him." Unquote. And then uh apparently Ms. Yang came to the courtroom and was asked when she was due and Ms. Yang indicated she did not hear any further comment because she just kept moving and said the woman said something about please be on our case and leave to save my boy from quote, "two years or twenty years" but he wasn't able to hear that very well. He indicates there were eight jurors sitting there when this discussion was taking place.

The trial court indicated that it would like to interview Juror #1, and possibly other jurors, about the potential taint this information caused. The trial court questioned Juror #1 who indicated that the information did not affect his ability to keep an open mind. Juror #1 believed that the person he heard speaking was affiliated with defendant but that the information did not cause him to be biased for or against defendant. Juror #1 did not think that the other jurors heard the comments, but they were present. When asked exactly what the person said, Juror # 1 stated:

> It was before opening statements were made. It was right during lunch time, I had just gotten back. They were just talking about the case, talking about the uh victim um about what she thought uh was wrong with it; why she thought she wasn't credible um and basically—the only thing that really—the only thing that I really thought was uh that kind of stayed in my mind was that at one point I heard something about why would she stay in the bed; and I just knew that for somehow there's a somebody staying in the bed related and said before opening statements or anything about this case was even discussed.

Trial counsel requested that each juror be asked whether he or she heard someone talking about the case. The prosecutor requested that Juror #1 be excused and was concerned about further tainting the jury by polling each juror. The trial court individually asked each juror whether he or she overheard comments about the case. Juror #4 indicated that she heard someone talking about the case after lunch. Juror #4 stated that everyone in the vicinity could hear the lady speaking. Juror #4 stated that the statements did not affect her ability to keep an open mind. Juror #4 believed the person was affiliated with defendant but that did not affect her view of defendant. Juror #5 also heard some ladies talking in the hallway "about what was going on at that time," but did not really hear what they said. Juror #5 was not sure which side the

---

[1] The transcript of the first day of the trial indicates a spectator was removed from the courtroom.

ladies were affiliated with and the statements did not affect his view of the case. None of the other jurors indicated that they overheard any comments about the facts of the case.

Trial counsel argued that two of the jurors indicated that everyone heard the comments and, thus, the jury was tainted. He requested a mistrial. The prosecutor requested that Juror #1 and Juror #4 be excused. Trial counsel argued that more than three jurors heard the statements but may have been confused by the trial court's question. He argued that other jurors may have subconsciously heard statements that could affect them. The trial court agreed that Juror #1 and Juror #4 should be dismissed, but it found no indication that 11 other jurors heard anything, and Juror #5 did not hear specifics. Trial counsel requested that Juror #5 be interviewed again. Trial counsel argued that Juror #5 should be excused or a mistrial granted. The trial court found that although Juror #1 and Juror #4 could remain on the jury, they should be removed because of the possibility of taint; the court denied defendant's motion for a mistrial.

"A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Lugo*, 214 Mich App at 704. "A defendant who chooses to be tried by a jury has a right to a fair and impartial trial." *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). In deciding whether to remove a juror, the trial court must weigh "a defendant's fundamental right to a fair and impartial jury with his right to retain the jury originally chosen to decide his fate." *People v Tate*, 244 Mich App 553, 562; 624 NW2d 524 (2001). A trial judge may excuse any juror impaneled for any condition that arises during a trial that the judge believes justifies doing so, "unless the number of jurors be reduced to less than 12." MCL 768.18(1).

This Court reviews claims of external influences on a jury as follows:

In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. . . . If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt. We examine the error to determine if it is harmless beyond a reasonable doubt because the error is constitutional in nature. The people may do so by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming. [*People v Fletcher*, 260 Mich App 531, 540; 679 NW2d 127 (2004) (citations omitted).]

To the extent that defendant argues that he was denied the jury he selected, we find that the trial court did not abuse its discretion in removing Juror #1 and Juror #4. Although Juror #1 and Juror #4 indicated that the statements they heard did not affect them, there was a possibility that they could be affected by what they heard. The trial court was permitted to excuse such jurors for any condition it believed justified excusal. MCL 768.18(1). Removal of Juror #1 and Juror #4 did not reduce the number of jurors to fewer than 12.

The trial court's decision to retain Juror #5 and deny a mistrial was also within the range of principled outcomes. See *Duenaz*, 306 Mich App at 90. Juror #5 stated that he did not really

hear what was said; he was not sure which side the speaker was associated with, and he was not affected by the statements. The remaining jurors all indicated that they did not hear any comments about the case. Although Juror #1 indicated that several other jurors were present when the statements were made, he did not think they heard anything. Further, while Juror #4 stated that everyone in the vicinity could hear the person speaking, it is not clear who was in the vicinity at the time. Moreover, it is presumed jurors are truthful and honor their oath. *People v King*, 215 Mich App 301, 303; 544 NW2d 765 (1996). Accordingly, defendant has failed to prove that the remaining jurors, including Juror #5, were "exposed to extraneous influences" that "created a real and substantial possibility that they could have affected the jury's verdict." *Fletcher*, 260 Mich App at 540. The jury was also instructed not to let prejudice influence its decision. It is presumed that jurors follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Thus, the trial court did not abuse its discretion in retaining Juror #5, defendant was not denied a fair trial, and the trial court did not abuse its discretion in denying a mistrial. See *Mahone*, 294 Mich App at 215; *Lugo*, 214 Mich App at 704.

## II. PROSECUTORIAL MISCONDUCT

Defendant also contends that he was denied a fair trial and due process of law based on the prosecutor's improper appeal to the jury's sympathy. We disagree.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). This Court reviews allegations of prosecutorial misconduct on a case-by-case basis, considering the prosecutor's remarks in context. *Id*.

During her rebuttal argument, the prosecutor discussed the victim's credibility, stating:

Counsel was saying [the victim], she was evading the questions, she was arguing; and like I said there were times when, yeah, she didn't wanna answer the questions. There is [sic] times when she was upset and when I asked for a break, she said yes and got up off the stand and she ran out. Why? Because this woman has gone through hell! This woman was beaten and raped and then she comes to court, she does everything she's supposed to do. She calls the police; she tells them who raped her; she tells them who beat her; she goes to the hospital; she does a line-up; she goes to the nurse; she gives statements; she does what she's supposed to do. But what happens, she comes to court and she gets raped again and she's called a liar.

Trial counsel objected to the suggestion that the victim was being raped again, and the trial court noted the objection.

"A prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008) (citations omitted). In *Unger*, this Court found that the prosecutor's comments that a crime victim was "re-victimized" in court were improper. *Id*. But, the Court concluded that viewed in context, the comments were relatively brief and did not likely deflect the jury's attention from the evidence presented.

Further, the jury was instructed that the attorney's statements and arguments were not evidence. For these reasons, the Court concluded that the prosecutor's brief improper remark did not deny the defendant a fair trial or affect the outcome of the proceedings. *Id*.

The prosecutor's argument that the victim was being "raped again" was improper but does not warrant reversal. *Unger*, 278 Mich App at 237. The remainder of the prosecutor's remarks also does not warrant reversal because they merely offered an alternative explanation for the victim's conduct other than defense counsel's argument that the victim was not credible. Even an improper remark may not require reversal when the prosecutor is responding to the defense counsel's argument. *Id*. at 238. The prosecutor was explaining why the victim may have appeared upset in an attempt to rebut trial counsel's arguments that she was not credible. While discussing the victim's credibility the prosecutor did, in her initial closing argument, also discuss how the victim had to come to court and relive the "horrible crime," she made the specific claim that the victim was "raped again" in rebuttal. Moreover, the comment was relatively brief and did not likely deflect the jury's attention from the evidence presented. *Id*. at 237, 238. Although the trial court only noted the objection when it was made and did not provide a specific curative instruction at that time, it did instruct the jury at the end that it "must not let sympathy or prejudice influence [its] decision" and that "[t]he lawyers' statements and arguments are not evidence." And, although they were not specifically curative instructions, we conclude in light of the presumption that jurors follow their instructions and that these instructions were sufficient to cure any possible prejudicial effect of any improper prosecutorial statements. *Graves*, 458 Mich at 486; *Unger*, 278 Mich App at 235; *People v Callon*, 256 Mich App 312, 330-331; 662 NW2d 501 (2003). Accordingly, we conclude defendant was not denied a fair trial.

We affirm.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

-5-