*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ENRIQUE ESTRADA III,

        Defendant-Appellant.

UNPUBLISHED
February 14, 2025
2:22 PM

No. 365837
Ottawa Circuit Court
LC No. 22-045115-FC

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant, Enrique Estrada, III, was convicted by a jury of first-degree murder, MCL 750.316, and the trial court sentenced him to a mandatory term of life imprisonment without the possibility of parole. Estrada appeals as of right, challenging the sufficiency of the evidence supporting his conviction. He does not dispute that he killed the victim, Katherine Rutgers. Instead, he argues that there was insufficient evidence that the killing was intentional and premeditated. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case started with Estrada killing Rutgers by asphyxiation in December 2021. Estrada and Rutgers had been in a tumultuous romantic relationship that began around June 2021. By October 2021, it appeared that the relationship between Rutgers and Estrada was off and on. According to evidence obtained from Estrada's phone, Estrada suspected Rutgers of returning to a former romantic partner. Rutgers's sister testified that Rutgers started dating Estrada shortly after dating another man and that both relationships had "red flags." She testified that she was aware that Estrada had attempted to access Rutgers's phone, had "stalked" her at work, and attempted to access her apartment building by breaking the handle to the basement door. Likewise, one of Estrada's coworkers, with whom Estrada confided, described Rutgers and Estrada's relationship as "very toxic." Approximately two-and-a-half weeks before Christmas 2021, Rutgers began a dating relationship with a coworker of hers.

On December 25, 2021, at approximately 4:30 p.m., Rutgers dropped off one of her daughters at her mother's house for a Christmas party, and then Rutgers went home. At 11:27 p.m.,

Rutgers messaged Estrada, saying, "[C]ome here." Rutgers also texted with her sister-in-law between approximately 10:06 p.m. and 11:22 p.m. that night.

At approximately 2:00 a.m. on December 26, 2021, Estrada called 911, requesting a welfare check for Rutgers. Law enforcement was dispatched to her apartment and found Estrada outside. Estrada told the officer that Rutgers had not been answering her phone and that the apartment door was locked. He claimed that he had been visiting her, left to go for a walk outside for a couple hours, and he found the door locked when he returned. The officer looked into the windows, knocked on the door multiple times, and called Rutgers's phone unsuccessfully. The officer explained to Estrada that he did not believe he had a basis to force entry into Rutgers's apartment, suggested that Estrada find a way home, and left.

Rutgers was found dead on December 26, 2021. Throughout that day, her mother tried to contact her. After not receiving a response to her attempts to contact Rutgers, at approximately 9:00 p.m., Rutgers's mother decided to simply take Rutgers's daughter to Rutgers's apartment. After eventually gaining entry, Rutgers's mother found Rutgers deceased in her bedroom, and she called 911. One of the responding officers was the same officer who responded to Estrada's 911 call the previous night. In light of Rutgers's death, the officer viewed Estrada's prior behavior as suspicious.

Rutgers had no obvious injuries. But she appeared to have been dead for an extended period of time. The fire department checked the apartment's carbon monoxide levels and did not detect toxic levels.

Officers discovered that a door in the apartment opened to a stairway to the basement, which was partially opened when officers arrived. There also was an exterior entrance to the basement. The exterior door and the stairwell in Rutgers's apartment were the only two methods to access the basement. At trial, the prosecution presented evidence that on November 4, 2021—nearly two months before the Rutgers's death—Estrada had sent a text message to the landlord of the apartment building admitting that he had broken into the exterior basement door and that he would pay for the repairs.

The police located Estrada at his home during the early hours of December 27, 2021, and later that morning, Estrada went to the police department and admitted to killing Rutgers by holding a towel over her face. Estrada's interview was recorded, but, at trial, the prosecution presented his incriminating statements through the testimony of Detective Joel Maat of the Holland Police Department. Detective Maat testified that Estrada confessed to killing Rutgers by holding a towel over her face. Estrada stated that he left the towel that he used at a park, and officers located and recovered multiple towels. Officers took pictures of the towels, and those pictures were shown to Estrada during the interview. He indicated that those were the towels that he used to smother Rutgers. Police located similar towels inside Rutgers's apartment.

During the interview, Estrada asserted that he did not remember how the events transpired but he speculated that he may have gotten a rag from the kitchen, that he did not believe that the rag was clean, that it felt wet, and that he "may have put something on the rag." Estrada speculated that the substance on the rag may have been "something around the house," like a cleaning chemical. Estrada also asserted that Rutgers had previously discussed committing suicide, and

that, if she went through with it, then she would want it to be done with the assistance of somebody she trusted, and that Estrada might have been thinking about that, and his "mind blanked out."

At trial, the prosecution presented forensic evidence obtained from the towels recovered by the police. Laboratory testing revealed that medium petroleum distillates[1] were on at least one of the recovered towels, and a can of mineral spirits—which contains medium petroleum distillates—was later discovered in the basement of Rutgers's apartment building. Fingerprints found on the can of mineral spirits matched Estrada's fingerprints.

The prosecution also presented incriminating forensic evidence obtained from Estrada's cell phone. For example, the search history on Estrada's cell phone revealed Internet searches on December 26, 2021, beginning at 1:53 a.m., for "Holland State Park camera info, Holland, Michigan," and "MI Holland cam, Holland, Michigan." On December 26, 2021, at approximately 8:32 p.m., Estrada attempted to download a PDF titled "LC304_murder_manslaughter_and_infantacide_report_easyread.pdf" from lawcom.gov.uk. An Internet search was also performed for: "if you killed someone, what would you do?" Estrada's phone also visited numerous live-streaming websites that showed camera feeds from Holland parks that night and into the morning of December 27, 2021. It was also established that Estrada's phone performed an Internet search for "Katherine Paige Rutgers dead" at 1:53 p.m. on December 27, 2021. However, this search would have been entered while, or after, Estrada was being interviewed by law enforcement officers at the Holland Police Department. During that interview, officers offered multiple scenarios as possible motives for the murder but Estrada denied each scenario as reflecting his motive for killing Rutgers.

The prosecution also presented evidence of Rutgers's autopsy report, which concluded that the cause of her death was asphyxia by smothering, and the manner of her death was homicide. Dr. David Start, the Chief Medical Examiner for Ottawa County who performed the autopsy, testified that small abrasions and multiple punctate abrasions were discovered on Rutgers's chin and jawline, which occurred at the time of death and were the result of pressure being placed on her jaw. Those abrasions—as well as their shape and location—were consistent with someone's thumb and index finger placing pressure on Rutgers's face, possibly by pressing a towel to her face.

Because of the unavailability of Rutgers's body by that time, and the way the blood samples were stored, subsequent testing for medium petroleum distillates in Rutgers's body was not possible. However, Dr. Start testified that, hypothetically, the presence of medium petroleum distillates on a cloth being used to suffocate a victim could cause the victim to lose consciousness more quickly.

---

[1] Medium petroleum distillates are a class of ignitable liquids that are petroleum derivatives. Examples of medium petroleum distillates include paint thinners, dry cleaning solvents, and automotive part cleaners.

Rutgers also had abrasions originating from the time of death on her left thumb and her right wrist, as well as contusions on her left lower leg originating from the time of death. These abrasions and contusions were consistent with a struggle.

There was also evidence that Rutgers scratched Estrada. The investigating officers photographed Estrada. He had scratch marks on both of his arms. Estrada's DNA matched DNA that was recovered from Rutgers's fingernail clippings. Rutgers's left-hand fingernail clippings revealed four DNA contributors, at least one of whom was male, and it was 120 million times more likely that the male contributor was Estrada rather than another individual. Regarding the right-hand fingernail clippings, three DNA contributors were identified, one of whom was male, and it was 110 billion times more likely that Estrada was the male contributor rather than another individual.

Estrada was charged with open murder, and the jury convicted him of first-degree murder. The trial court sentenced him in April 2023. He now appeals.

## II. STANDARD OF REVIEW

We review de novo a challenge to the sufficiency of the evidence. *People v Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). In doing so, we view the evidence in a light most favorable to the prosecution to determine whether a trier of fact could find that the essential elements of the charged crimes "were proven beyond a reasonable doubt." *Id*., quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). As a reviewing court, we draw all reasonable inferences and make credibility choices in support of the jury verdict, keeping in mind that circumstantial evidence can constitute sufficient proof of the essential elements of the charged crimes. *People v Savage*, 327 Mich App 604, 613-614; 935 NW2d 69 (2019). The prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).

> The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citations, and emphasis omitted).]

## III. LAW AND ANALYSIS

Estrada argues that there was insufficient evidence presented at trial for a juror to conclude beyond a reasonable doubt that he acted with intent or premeditation necessary to find him guilty of first-degree murder. We disagree.

First-degree premeditated murder requires proof that (1) the defendant intentionally killed the victim and (2) that the act of killing was premeditated and deliberate. *People v Ortiz*, 249 Mich

App 297, 301; 642 NW2d 417 (2001). "Premeditation is not statutorily defined and cannot be evaluated in a rigid and mechanical manner." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019) (quotation marks and citation omitted). "A murder is committed deliberately if it is done without adequate provocation or while undisturbed by 'hot blood.' " *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 10. Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Oros*, 502 Mich at 242 (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds[.]" *Id*. at 242-243 (quotation marks, brackets, and citations omitted).

A jury may infer the defendant's state of mind "from [the] defendant's conduct judged in light of the circumstances." *Id*. at 243 (citation omitted.). See also *Ortiz*, 249 Mich App at 301 ("The elements of premeditation and deliberation may be inferred from circumstances surrounding the killing.") (Quotation marks omitted). The prosecution can establish premeditation through evidence of "(1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008) (providing a nonexhaustive list of factors). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "[W]hat constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict." *Oros*, 502 Mich at 243-244.

Estrada does not dispute that he killed Rutgers. Instead, the only matters in dispute are his intent and premeditation. The evidence in this case, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Estrada intentionally killed Rutgers with premeditation. Each of the four considerations from *Unger* support the conclusion that a reasonable juror could find premeditation beyond a reasonable doubt.

First, the evidence of Estrada and Rutgers's fraught relationship supports premeditation. See *Unger*, 278 Mich App at 229. Estrada and Rutgers were in a tumultuous on-and-off relationship, as evidenced by voluminous messages that were introduced into evidence. Standing alone, this could be insufficient, but when we consider it in the context of the other evidence and considerations, it supports premeditation.

The evidence of Estrada's conduct before the killing supports premeditation. See *id*. We consider the time that it took to obtain the towel from Rutgers's kitchen, traverse the stairs to the building's basement, douse the towel with mineral spirits, return to Rutgers's bedroom, and murder her. This constitutes sufficient time to support a rational trier of fact concluding, beyond a reasonable doubt, that Estrada acted with intent and premeditation, supporting his conviction of first-degree murder.

Likewise, the circumstances of the murder support premeditation. See *id*. The forensic evidence—notably the autopsy—indicates that Estrada held the cloth over Rutgers's face as she struggled and lost consciousness. His DNA was recovered from her fingernails. This evidence allows a reasonable juror to conclude that her death was not immediate. Instead, a period of time elapsed while Estrada was killing her that was sufficient for him to consider his actions. In other words, there was sufficient time to take a second look.

Regarding Estrada's conduct before the murder and the circumstances of the murder itself, it is immaterial to the resolution of this matter whether Estrada arrived at Rutgers's apartment with the intent to murder her that night. It is material, however, that in the time that elapsed during which Estrada prepared the towel for the purpose of murdering Rutgers, he had ample time "which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Oros*, 502 Mich at 242 (citations omitted). Estrada, nonetheless, went through with his actions, and there was no evidence presented establishing provocation or "hot blood."

Critically, Estrada's conduct after the murder supports the conclusion that the killing was premeditated. After the murder, he called the police as part of a ruse in what a reasonable jury could conclude was an attempt to cover his tracks. His Internet searches also indicated that he knew he killed Rutgers rather than rendering her unconscious.

This is not just evidence of premeditation; it is strong evidence of intentionality, which is to say, lack of mistake. One of Estrada's theories was that he meant to render Rutgers unconscious so as to surreptitiously access her phone; he did not mean to kill her. His conduct after the murder indicated that he already knew she was dead. Instead of calling 911 to request an ambulance, a reasonable action for someone who accidentally caused more harm than he meant, Estrada called 911 to request a wellness check. Knowing that he, at a minimum, harmed Rutgers, he did not press the officer to enter the apartment to help her, leaving her body to be discovered by someone else.

Finally, we consider Estrada's statement to investigators. The *Unger* criteria are nonexhaustive. In one light, Estrada's confession bears on each of the four stated criteria; in another light, his confession is its own consideration. Here, Estrada confessed to killing Rutgers by smothering her with a towel, which he obtained from the kitchen and which he admitted might have had some kind of substance on it. A stairwell in Rutgers's apartment allowed access to the building's basement, and in that basement was found a can of mineral spirits, with Estrada's fingerprints on it, and which contained medium petroleum distillates. He confessed to discarding the towel in a nearby park; that towel was recovered from that park, it was found to contain medium petroleum distillates, and it matched those found in Rutgers's apartment. His statement, in the context of all the other evidence, would support a reasonable juror's conclusion that he acted intentionally and with premeditation.

The record indicates that Estrada was motivated by his tumultuous romantic and sexual relationship with Rutgers, he at some point formed the intent to murder her, and he acted with sufficient premeditation to support the jury's finding of first-degree murder. We affirm.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford