*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOEL BRANDON WALLACE, also known as JOEL
BRANDON TRUMP,

        Defendant-Appellant.

UNPUBLISHED
May 18, 2023

No. 349512
Midland Circuit Court
LC No. 18-008033-FC

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Joel Brandon Wallace (also known as Joel Brandon Trump), appeals by right
his convictions, following a jury trial, of first-degree murder, MCL 750.316(1)(a), felony murder,
MCL 750.316(1)(b), unlawful imprisonment, MCL 750.349b(1), forgery, MCL 750.248, and
uttering and publishing, MCL 750.249. The trial court sentenced Wallace, as a third-offense
habitual offender, MCL 769.11, to serve life in prison without parole for his first-degree murder
and felony murder convictions, 171 months to 30 years in prison for his unlawful-imprisonment
conviction, and 34 months to 28 years in prison for his forgery and uttering and publishing
convictions. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

The victim in this case, Victoria Kilbourne, was the 74-year-old great-aunt of Wallace.
Kilbourne was last seen alive on Monday, June 25, 2018. Her body was located on Friday,
June 29, 2018, on Wallace's hunting property. Kilbourne had loaned Wallace large sums of
money, and before her death, had informed several people that she intended to stop loaning money
to him. The night that Kilbourne went missing, Wallace attempted to cash a check ostensibly
written by Kilbourne to Wallace's wife, but witnesses testified that the signature on the check was
not consistent with Kilbourne's usual signature. Following the discovery of Kilbourne's body,
Wallace wrote a letter to a friend, proposing that the friend create a recording in which someone
pretending to be Wallace's younger brother would confess to the murder. Wallace also asked his

-1-

wife to call in an anonymous tip on a disposable phone about seeing his brother's SUV at Kilbourne's residence on the night she went missing.

Other evidence linked Wallace to the murder. His fingerprints and a partial palm-print were found on the duct-tape that had been used to bind Kilbourne's mouth, hands, and legs. Additionally, only Wallace had a key to the gate on his hunting property, and that gate was locked when officers arrived. Finally, all the memory cards were missing from the trail cameras on Wallace's hunting property. The jury ultimately found Wallace guilty of the murder and related crimes.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Wallace raises several arguments regarding the effectiveness of his lawyer's assistance at trial. Most of the arguments are preserved because they were raised at a *Ginther*[1] hearing; however, Wallace did not raise his claim that his lawyer improperly congratulated a police detective on his promotion. A defendant's challenge to the effectiveness of his or her lawyer is a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Id*. A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). We review Wallace's unpreserved claim for mistakes apparent from the record. See *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

### B. ANALYSIS

To establish a claim of ineffective assistance, the defendant must first show that his or her lawyer's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must establish that, "but for [his or her lawyer's] deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). Nevertheless, the lawyer always retains the duty to make reasonable investigations and exercise professional judgment. *Trakhtenberg*, 493 Mich at 52-53.

On appeal, Wallace's ineffective-assistance claims fall into two broad categories: claims involving evidentiary decisions made by his trial lawyer and claims related to his lawyer's alleged failure to investigate and prepare for trial. We address each in turn.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## 1. EVIDENTIARY DECISIONS

On appeal, Wallace first argues that his defense lawyer should have contested the police's investigation, which included obtaining a search warrant and an arrest warrant based upon blood evidence and a black roll of tape from Wallace's truck. Relatedly, Wallace asserts that his lawyer provided ineffective assistance by failing to draw attention to potentially exculpatory DNA evidence. Generally, what evidence to present is a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Moreover, the defendant must overcome the strong presumption that the defense lawyer's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did." *Id*. (quotation marks, alterations, and citation omitted). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

At the *Ginther* hearing, Wallace's lawyer testified that statements that had been used to support the search and arrest warrants regarding the tape and the blood on Wallace's truck had not been forensically linked, but he then added that that did not mean that the police did not reasonably believe those things were true at the time the warrant was issued. Rather than focusing on the deficiencies in the warrant, therefore, Wallace's lawyer elicited trial testimony showing that the blood and tape in the truck was not, in fact, linked to Kilbourne's death. At trial, a police detective testified that when Kilbourne's body was found, her feet, hands, and wrists were bound behind her back with black tape, and there was also black tape around her mouth and head. The detective retrieved a roll of "black gorilla tape" from Wallace's truck and secured it for analysis, but it was not the same type of tape. Wallace's lawyer raised this point again on cross-examination, and the detective agreed that the tape removed from Wallace's truck did not match the tape found on Kilbourne's body. Second, a forensic scientist testified that he processed Wallace's vehicle and found two areas of possible human blood, including in a grooved area on the tailgate. Yet, the scientist also testified that, following preliminary tests, the sample was negative for human blood. Thus, Wallace's lawyer addressed the evidence regarding the tape taken from Wallace's truck and the fact that the blood found on Wallace's truck was not human blood. We conclude that Wallace has not overcome the presumption that his lawyer's decision not to present evidence related to the warrants was sound trial strategy. See *Vaughn*, 491 Mich at 670.

Regarding the DNA evidence, a forensic scientist testified that a blood sample taken from inside the truck was "uninformative," and that a swab of possible blood from a shovel was also uninformative and not significant to include or exclude Kilbourne as a contributor. In his closing argument, Wallace's lawyer emphasized the lack of DNA evidence, stating that none of Kilbourne's blood or DNA had been found in Wallace's truck. And at the *Ginther* hearing, an employee of an independent forensic company testified that she had received lab reports related to Wallace's case. She testified that nothing conclusively associated Kilbourne with samples collected from a shovel, a shoe, or a vehicle. She did not have any concerns about the way the DNA analysis was performed in the case. Nevertheless, Wallace relies on his lawyer's statement at the *Ginther* hearing that the DNA evidence had not been a big issue because Kilbourne's DNA was not found in Wallace's truck. His argument takes that statement out of context. His lawyer also explained that, to the extent that there was DNA evidence, it supported that Kilbourne had not been in his truck. Wallace's lawyer's statement does not support that he neglected the DNA

evidence. Instead, it shows that he made the strategic decision to rely upon the already favorable DNA evidence. The decision not to attempt to impeach favorable evidence was a sound trial strategy.

Next, Wallace argues that his lawyer provided ineffective assistance in regard to references to a baseball bat. During the nine-day trial, the baseball bat was mentioned once. Specifically, while describing the search of Wallace's truck, a detective testified that there had been a baseball bat inside the truck. At the *Ginther* hearing, Wallace testified that he had wanted his lawyer to raise that there had been no baseball bat in the evidence log or his truck. In response to Wallace's motion, the prosecution presented the affidavit of a detective sergeant who averred that the bat did not appear in the Midland Police Department evidence log because it had been seized by the Michigan State Police for testing. Further, Wallace's lawyer testified that he remembered that Kilbourne's death was the result of a combination of blunt-force trauma or suffocation, but he was not aware that any weapon had been identified. He did not specifically recall the bat.

The trial court found that the baseball bat had not been in the Midland Police Department evidence log because it had been seized by the Michigan State Police crime lab. It further found that the bat was not a major point at trial and was not part of the prosecution's theory of the case. The court was "not persuaded by Defendant's assertion that a brief line of questioning by the Prosecution at trial implied that the bat was used against [Kilbourne]," and it ruled that Wallace's lawyer had exhibited a sound trial strategy by not drawing further attention to the bat.

The trial court did not clearly err by finding that the strategy of not drawing attention to the bat was reasonable. Indeed, "[t]here are times when it is better not to object and draw attention to an improper comment." *Horn*, 279 Mich App at 40 (quotation marks and citation omitted). Had Wallace's lawyer attempted to impeach the detective's single statement on the basis that the bat had not been in the Midland County Police Department evidence log, the prosecution would have been able to establish that the bat had been seized by a different police agency. This would have drawn further attention to the bat in a case that involved blunt-force trauma. We are not convinced that the trial court made a mistake when it found that Wallace's lawyer exercised a reasonable strategy by not pursuing the issue.

Wallace also argues his lawyer failed to challenge a letter that Wallace wrote from jail. A decision regarding whether to impeach evidence is a matter of trial strategy. *Horn*, 279 Mich App at 39. Moreover, the defendant's lawyer is not required to make a meritless or futile objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Further, the defendant's lawyer has no obligation to pursue an investigation when a defendant has given information that provides his or her lawyer with a reason to believe that "pursuing certain investigations would be fruitless or even harmful[.]" *Strickland*, 466 US at 691. And a defense lawyer is not required to do "what is impossible or unethical." *People v Buie*, 298 Mich App 50, 66; 825 NW2d 361 (2012) (quotation marks and citation omitted).

The letter that Wallace wrote to his friend featured heavily at trial. His friend testified that he had received a letter from Wallace after Wallace had been arrested, and the letter discussed wanting to frame Wallace's brother for Kilbourne's murder. The letter contained a script for what the person pretending to be Wallace's brother was supposed to say. Further, a police detective

testified that he had attempted to obtain a handwriting sample from Wallace in order to send it for analysis. Wallace refused to provide writing samples, despite a court order.

Wallace admitted that he wrote a letter to his friend, but he stated that his friend only asked him to sit down with his brother to try and get his brother to repeat comments his brother had previously made about being able to murder someone and get away with it. Wallace believed that someone else wrote a letter with handwriting similar to his, and that the handwriting was not analyzed. At the *Ginther* hearing, Wallace's lawyer testified that he did not think to get a handwriting expert to determine whether Wallace had written the letter. However, he also stated that he had no reason to believe that the letter had been sent by anyone other than Wallace and agreed that hiring an expert could harm Wallace's position by confirming what other results had shown.

The trial court found that Wallace's lawyer's performance was not deficient. It would not have been a reasonable defense strategy to attempt to prove that the letter was not in Wallace's handwriting, particularly when his lawyer had no reason to believe that anyone other than Wallace had sent the letter and Wallace had some basis to not want his handwriting analyzed.

Next, Wallace argues that his lawyer provided ineffective assistance by failing to impeach the testimony of the husband of Kilbourne's landlord regarding the timeline on the day of Kilbourne's disappearance because his testimony that he saw Wallace and Kilbourne together for about 20 minutes was inconsistent with a timeline established in the video from a nearby restaurant. The record does not support his argument.

The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). In this case, the landlord's husband testified about a sequence of events concerning the vehicles outside of Kilbourne's residence, including that he was positive that both Kilbourne's car and Wallace's truck had been parked outside the residence at the same time. However, the husband testified that he was not sure how long both vehicles were there. He explained only that he came up from mowing a short time later, which certainly does not imply that the vehicles were outside Kilbourne's house together for 20 minutes. Accordingly, the argument that Wallace makes on appeal is simply not supported by the record.

Moreover, Wallace's lawyer emphasized the timeline by arguing that it was improbable that Wallace could have kidnapped Kilbourne in the 3 minutes and 12 seconds that passed between when Kilbourne's vehicle drove past the restaurant in one direction and when his vehicle drove past in the other direction. The trial court found that it was a reasonable strategy to focus on that evidence regarding the timeline. The court's finding in that regard was not clearly erroneous.

Finally, Wallace argues that his lawyer provided him with ineffective assistance by praising a detective on the record for a promotion. In this case, the following exchange took place at the start of Wallace's lawyer's cross-examination of the detective:

> *Q*. Good morning, Detective.
>
> *A*. Good morning, sir.

*Q*. I know you've been—you're in a new job position, got a promotion. Congratulations, I didn't have—think I've seen you since then but nice job. . . .

Congratulating an adverse witness on a recent promotion in front of the jury was not objectively unreasonable. However, even if Wallace's lawyer's performance was deficient, Wallace cannot show that, but for his lawyer's error, "a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). A single error in bolstering the credibility of a single witness would not make a different result reasonably probable.

## 2. FAILURES TO INVESTIGATE AND PREPARE

Wallace raises two arguments related to his lawyer's failure to investigate and prepare for his case: (1) that his lawyer should have advanced the alternative theory that Wallace's brother murdered Kilbourne, and (2) that his lawyer should have sought severance of his forgery and uttering and publishing charges from his murder charges. We address each in turn.

First, at the *Ginther* hearing, Wallace testified that he told his lawyer about his family history, but "it seemed like he shrugged everything off." Wallace testified that his brother had made a statement to his aunt's niece that he could get away with murder and have someone else blamed for it. Wallace believed that his lawyer should have drawn attention to his brother and the landlord because they were both suspicious individuals.

Wallace's lawyer testified that he recalled Wallace telling him that his brother had special military training or knowledge that would allow him to pull off a murder and blame someone else. He explained that he had considered presenting an alternative theory that Wallace's brother had been the murderer, but there was no legitimate evidence that could have been presented. Further, Wallace's lawyer was concerned that attempting to bring up character evidence "would probably really backfire for one thing, considering his background." Specifically, he was concerned about the possibility of opening the door to evidence regarding Wallace's prior criminal record, which included going to prison for sexual assault and filing a false police report. Indeed, Wallace acknowledged that a family separation began because of criminal sexual conduct charges when he was 15 or 16 years old.

The trial court considered that Wallace's lawyer had testified that he had considered the theory, but found that there was no evidence to support the claim and that Wallace's lawyer had also expressed concern that eliciting testimony from Wallace's family would lead to the possibility of opening the door to Wallace's past crimes. It found that Wallace's lawyer had not unreasonably declined to pursue investigations that would be fruitless or harmful. Considering that Wallace's criminal and family history included defendant having sexually assaulted his niece and accusations that he had done the same to his brother's wife, the trial court found that Wallace's lawyer acted reasonably by failing to pursue the defense.

The court's finding was not clearly erroneous. A defense lawyer's responsibilities include not only advocating for his client, but ensuring that he did not pursue strategies that would either be fruitless or harmful. *Strickland*, 466 US at 691. Here, when he did not uncover any evidence to support Wallace's theory that his brother had framed him, Wallace's lawyer had every reason to believe that presenting Wallace's brother as an alternative murderer would have been fruitless.

And when Wallace's lawyer was aware that pursuing Wallace's family history would have opened the door to Wallace's criminal history involving his family, Wallace's lawyer had sound reasons to believe that pursuing such a strategy would be harmful.

Next, Wallace argues that his lawyer provided ineffective assistance by failing to move to sever his murder-related charges from his forgery-related charges. A defense lawyer's decision not to seek severance of charges may form the basis of an ineffective-assistance claim. See *People v Noble*, 238 Mich App 647, 662; 608 NW2d 123 (1999). However, a defense lawyer is not ineffective for failing to move to sever charges when the prosecution would have presented the same evidence to show a defendant's motive. *Id*. at 663.

In this case, Wallace's lawyer testified that moving to sever Wallace's forgery-related counts from the case did not cross his mind because the prosecution's theory had been that there had been one continuous transaction from the murder to the point where Wallace attempted to cash the check, and all of the witnesses would have been the same. The case involved quite a bit of testimony about finances and Kilbourne's decisions to gift or loan money to Wallace. The trial court agreed with Wallace's lawyer that testimony about finances concerned Wallace's motives, and therefore, severance would not have been appropriate because the conduct would have been part of the same plan or scheme. It found that Wallace's lawyer's decision not to file a motion to sever the charges was reasonable. We are not definitely and firmly convinced that the trial court made a mistake because the same evidence could have been admitted regardless of whether the charges were severed.

## III. HEARSAY STATEMENTS

### A. STANDARD OF REVIEW

Wallace argues that the trial court erred by admitting Kilbourne's statements to friends that she had been loaning money to him and was going to stop. This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. at 722-723. This Court reviews de novo the preliminary questions of law around the admission of evidence, such as whether a rule of evidence bars admitting it. *Id*. at 723.

### B. ANALYSIS

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible at trial unless an exception applies. *Duncan*, 494 Mich at 724. The improper admission of hearsay may implicate the defendant's constitutional rights. *People v Dendel (On Second Remand)*, 289 Mich App 445, 452-453; 797 NW2d 645 (2010).

One exception under which hearsay may be admitted is when the statement concerns a witness's statements of a state of mind, such as an intent, plan, or feeling:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [MRE 803.]

"Specifically, [prior] statements by murder victims regarding their plans and feelings have been admitted as hearsay exceptions in a number of jurisdictions." *People v Ortiz*, 249 Mich App 297, 309; 642 NW2d 417 (2001). When statements fall within a hearsay exception, they are presumed to be sufficiently reliable to protect the defendant's constitutional rights. *Id*. at 310.

Multiple witnesses testified Kilbourne had expressed her frustration with Wallace and an intent to stop loaning him money. According to Kilbourne's landlord, Kilbourne told her that her intent was to stop loaning Wallace money, and they spoke about it at least two times, including in the spring of 2018 and December 2017. Kilbourne's friend testified that Kilbourne had told him that she was "all done loaning [Wallace] any more money" when she was very upset that Wallace had not repaid her. Another of Kilbourne's friends testified that she spoke with Kilbourne about Kilbourne's finances more than 10 times and Kilbourne told her that she should not keep giving Wallace money. Kilbourne also told this friend that she had informed Wallace that "she was gonna take her truck—the truck back and sell it and get her money back for the truck." Wallace's brother testified that Kilbourne had stated that she was irritated with herself for continuing to loan defendant money. Kilbourne's banker testified that he and Kilbourne discussed Kilbourne's practices of loaning money to Wallace and that Kilbourne had been very upset and stated that "she was pretty much done giving them money because she got a charge on her account too." All of these statements were related to Kilbourne's plans or intent to stop loaning money to defendant. Accordingly, each was admissible under MRE 803(3), and the trial court did not err by admitting them.

Wallace also argues that the quantity of statements was unduly expansive. He has not provided authority that suggests that a number of similar statements may be excessive under MRE 803(3). Regardless, the argument lacks merit. In *Ortiz*, 249 Mich App at 307, this Court considered an argument that "the trial court improperly admitted numerous statements by the victim before her death." This Court rejected the defendant's argument on the basis that evidence of statements of the victim's mind, particularly evidence demonstrating motive and tension between a defendant and a victim, could be relevant to numerous issues in a murder case, including

issues of motive, premeditation, and deliberation. *Id.* at 310. Kilbourne's statements were not rendered inadmissible merely because they were numerous.[2]

   We affirm.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[2] We agree with Wallace that the trial court erred by ruling that the evidence was admissible under an unavailable-witness exception when the court failed to find that Wallace had the specific intent to render Kilbourne unavailable to testify. See MRE 806(b)(6); *People v Burns*, 494 Mich 104, 113; 832 NW2d 738 (2013). However, this error was harmless because the statements were admissible under MRE 803(3).