*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT STEWART ALDERTON,

        Defendant-Appellant.

UNPUBLISHED
January 18, 2024

No. 356493
Wayne Circuit Court
LC No. 19-004601-01-FC

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree felony murder and possession of a firearm during the commission of a felony ("felony-firearm"). Defendant was sentenced to life imprisonment without the possibility of parole for the first-degree felony murder conviction and two years' imprisonment for the felony-firearm conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the homicide of defendant's father, Rory Alderton, on January 11, 2019, at Rory's home in Detroit, Michigan. Testimony from Rory's girlfriend, Karen Schutter, and two of Rory's adult children, Kevin Alderton and Jessica Alderton, was admitted at trial and demonstrated that Rory was afraid of defendant and felt threatened by him. Rory previously obtained a personal protection order ("PPO") against defendant in November 2018, but defendant nevertheless continued to break into Rory's home and engage in violent and threatening behavior.

Rory died from multiple gunshot wounds, and DNA evidence collected from the murder scene showed that defendant's blood was located on Rory's front door and underneath Rory's fingernails. When he was arrested three days after the murder, defendant had scratches on his hands, and Rory's cellular telephone, an "iPhone," was in defendant's pocket. Rory's neighbors saw defendant outside of Rory's house during the 24-hour period surrounding the murder, and surveillance video footage from a nearby gas station showed defendant in the vicinity of the murder scene during that time period. Defendant was convicted of first-degree felony murder, MCL

750.316(1)(b), and felony-firearm, MCL 750.227b, and sentenced as previously noted. This appeal followed.[1]

## I. APPOINTMENT OF COUNSEL

On appeal, defendant first argues that the trial court erred when it removed his appointed counsel, Clifford Woodards as defendant's trial counsel and replaced Woodards with new appointed counsel, James Schlaff. We disagree.

## A. STANDARDS OF REVIEW

In order to preserve an argument that a defendant's right to counsel was violated because the trial court replaced the defendant's appointed counsel, the defendant must object to the substitution of defense counsel in the trial court. *People v Bailey*, 330 Mich App 41, 52-53; 944 NW2d 370 (2019). Defendant did not contemporaneously object to the trial court's replacement of Woodards.[2] Therefore, the issue is unpreserved, and we review the issue for plain error affecting defendant's substantial rights. *Bailey*, 330 Mich App at 53. Under plain-error review, a defendant must demonstrate that (1) an error occurred, (2) the error was clear or obvious, and (3) the error

---

[1] After defendant commenced this appeal, he filed in the trial court a motion for new trial, which the trial court denied. Defendant then filed in this Court a motion to remand the case to the trial court for a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), which this Court granted in part and remanded the case to the trial court for a hearing on defendant's ineffective-assistance-of-counsel claims. *People v Alderton*, unpublished order of the Court of Appeals, entered January 4, 2022 (Docket No. 356493). On remand, defendant filed a second motion for new trial, a *Ginther* hearing was held, and the trial court rejected defendant's ineffective-assistance claims and denied his second motion for new trial.

Defendant then filed in this Court a second motion to remand the case to the trial court, this time seeking an evidentiary hearing concerning the failure of the police to inform defendant of a video surveillance system of one of Rory's neighbors, and the failure of the police to preserve the surveillance system after examining it. We granted defendant's motion and remanded the case to the trial court for an evidentiary hearing. *People v Alderton*, unpublished order of the Court of Appeals, entered August 24, 2022 (Docket No. 356493). On remand, defendant filed a third motion for new trial, another evidentiary hearing was held, and the trial court denied defendant's renewed motion, concluding the government did not violate any constitutional requirements with respect to the neighbor's video surveillance system.

[2] Defendant notes in his appellate brief that he raised this issue in his first motion for new trial, but doing so did not constitute a contemporaneous objection that preserved the issue. See generally, *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999) ("[R]equiring a contemporaneous objection provides the trial court an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights") (quotation marks and citation omitted); *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003) (an issue concerning the trial was unpreserved because it was raised only in a posttrial motion rather than at trial).

was prejudicial, i.e., it affected the outcome of the lower court proceedings. *Bailey*, 330 Mich App at 53-54. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Bailey*, 330 Mich App at 54.

## B. ANALYSIS

This issue is moot as a result of Woodards's death approximately one year after the trial ended. In general, "a court will not decide moot issues." *People v Thue*, 336 Mich App 35, 39; 969 NW2d 346 (2021). "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *Id.* (quotation marks and citation omitted). Defendant argues that the trial court erred in replacing his appointed trial counsel, Woodards, whom defendant now professes to have preferred as his counsel. Defendant's appellate brief seeks a new trial because of the trial court's purported error in removing and replacing Woodards. However, as defendant acknowledges in his appellate brief, Woodards is deceased, and if this Court were to grant defendant his requested remedy of a new trial, he would again be represented by an attorney other than Woodards, the attorney whom defendant now claims to have preferred. It is, therefore, impossible for this Court to grant defendant a suitable remedy. The issue is thus moot, and we need not decide it. See *id.*

But even if the issue were not moot, defendant's argument lacks merit. Woodards was suspended from the practice of law for 30 days effective December 1, 2019, the suspension was then extended for another 75 days, and his license ultimately was not reinstated until October 29, 2020. On January 9, 2020, the court removed Woodards and appointed Schlaff as defendant's counsel. The case was tried from February 25, 2020 through February 28, 2020. Accordingly, it was proper for the trial court to remove and replace Woodards because he was unable to represent defendant while suspended from the practice of law. See MCR 9.119(B), (E).

## II. ADMISSION OF EVIDENCE

Defendant next argues that the trial court committed evidentiary and constitutional errors by admitting into evidence certain statements made by Rory. We disagree.

## A. STANDARDS OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). An abuse of discretion "occurs when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252.

However, a preliminary issue of law regarding the admissibility of evidence is reviewed de novo. *People v Jambor (On Remand)*, 273 Mich App 477, 481; 729 NW2d 569 (2007). Whether a defendant's constitutional rights of confrontation have been violated presents a question of constitutional law that is also reviewed de novo. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

## B. ANALYSIS

Defendant's challenged statements of Rory were admitted through the testimony of Schutter, Kevin, and Jessica, and through Rory's verified statement in support of the petition for a PPO against defendant. Defendant contends these statements were inadmissible and violated his right to confrontation. We turn, first, to the statements in question.

Schutter, Rory's girlfriend, testified that Rory said that he felt threatened by defendant because defendant broke into Rory's house and was threatening. Rory stated that he had obtained a PPO against defendant and had him arrested several times, and hoped that defendant would get off drugs and obtain rehabilitation. Rory told Schutter that defendant would sometimes break into Rory's house and sleep in the basement. When defendant was there, Rory kept his bedroom door barricaded because he felt threatened by defendant. Schutter related that Rory did not want defendant to hurt or kill anyone.

Kevin, Rory's son, testified that Rory told him about Rory's relationship with defendant, and Kevin saw the way that Rory and defendant interacted. Rory expressed concerns about defendant and was afraid that defendant was going to hurt Rory. According to Kevin, defendant acted erratic and damaged Rory's home when Rory was gone. Rory sent pictures to Kevin and told him about what was happening. After the PPO was obtained in November 2018, defendant would repeatedly come to Rory's house, Rory would call the police, and the police would arrest defendant. Kevin testified that defendant would then be released a day later and break into Rory's house again through a window. According to Kevin, Rory expressed concerns about defendant's behavior, arguments, and violent outbursts.

Jessica, Rory's daughter, testified that she had knowledge of Rory's relationship with defendant. Around the end of 2018, Rory stated several times that defendant was becoming aggressive toward Rory and that Rory was scared of defendant. Jessica stated that defendant began living with Rory in July 2018, and around October 2018 or November 2018, Rory was trying to get defendant out of the house because defendant was becoming violent and aggressive. Rory sent pictures to Jessica showing damage to Rory's bedroom door that defendant had caused while trying to get into Rory's locked bedroom. Jessica testified that Rory also said that defendant had destroyed a safe, and Rory sent Jessica pictures of holes defendant had put into a wall. According to Jessica, Rory was terrified and frustrated that the PPO was not working; Rory had defendant arrested several times, and Rory would then get out and come back into the house.

A redacted and certified copy of the PPO that Rory obtained against defendant was also admitted into evidence at trial. Two pages of the exhibit consisted of a verified statement made by Rory in support of the petition for a PPO. The statement was signed by Rory and dated November 6, 2018. In the statement, Rory asserted that at 2:00 a.m. on October 1, 2018, defendant kicked in Rory's door and told Rory to give defendant money or defendant would "f*** [Rory] up." Rory said that defendant was "stoned all the time" and that Rory was "afraid" defendant would "beat [Rory] with [defendant's] baseball bats he keeps in the house." On October 8, 2018, defendant "kicked" and screamed that Rory "better give [defendant] money and [Rory's] car keys or [defendant] would f*** [Rory] up." On November 3, 2018, defendant told Rory "to go get a hotel room or [Rory] would be sorry." Rory stayed with a friend that night, and when Rory

-4-

returned home the next day, defendant said he had warned Rory and started walking toward Rory until Rory drew a firearm.

"In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015). MRE 803(3)[3] provides the following exception to the general prohibition on hearsay:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In *People v Propp (On Remand)*, 340 Mich App 652, 667; 987 NW2d 888 (2022), held in abeyance ___ Mich ___; 990 NW2d 336 (2023), we held that "all of the [murder] victim's statements regarding defendant's pattern of stalking, threats, and domestic violence were admissible as evidence concerning the victim's state of mind—and her fear of defendant—under MRE 803(3)." "Evidence of the [murder] victim's state of mind, evidence of the victim's plans, which demonstrated motive (the ending of the marriage and the tension between the victim and defendant), and evidence of statements that defendant made to cause the victim fear were admissible under MRE 803(3)." *Propp*, 340 Mich App at 667 (quotation marks and citation omitted). In addition, the victim's "statements were also admissible for several valid nonhearsay purposes, including the effect that they might have had in motivating defendant to kill the victim." *Id*. at 667; see also *People v Ortiz*, 249 Mich App 297, 310; 642 NW2d 417 (2002) (explaining that the victim's statements were "relevant to numerous issues in the case, including the issues of motive, deliberation, and premeditation . . . .").

Rory's statements were admissible under MRE 803(3). The central focus of Rory's statements consisted of expressions that he was afraid of defendant and felt threatened by him. Rory's statements included examples of what caused his fear and feeling of being threatened and were relevant to facts at issue, including by demonstrating familial discord and tension that existed between Rory and defendant, and revealing a possible motive for defendant to have broken into Rory's home and killed him. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). Familial discord is similar to marital discord, which has been held relevant to establish a motive to commit murder.

> Evidence of marital discord is relevant to motive just as evidence of marital harmony would be relevant to show lack of motive. Discord or lack of discord in an ongoing relationship obviously has some tendency to make the existence of a

---

[3] An amendment of MRE 803(3) took effect on January 1, 2024, but the amendment does not alter the substantive meaning of the rule in any way that is relevant to the present issue on appeal. We have quoted the provision as it existed before the January 1, 2024 amendment.

> fact in controversy more or less probable—whether or not the accused ended the relationship as it is alleged he did. Whether the marital discord is of a type that would provide a motive for murder is an issue of weight, not admissibility. [*People v Fisher*, 449 Mich 441, 453; 537 NW2d 577 (1995).]

The statements also indicated a possible ground to find that defendant premeditated the murder. See *Ortiz*, 249 Mich App at 310. Thus, the trial court did not abuse its discretion when it admitted the statements under MRE 803(3).

Defendant further suggests that Rory's statements should have been excluded because they were substantially more prejudicial than probative. We disagree. Under MRE 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence is not unfairly prejudicial merely because it is damaging to a party's case. *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). Evidence is unfairly prejudicial if it has "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id*.

> Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [*People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) (quotation marks and citations omitted).]

Rory's statements were probative of the family discord that existed between himself and defendant, which was relevant to motive and premeditation. Defendant's behavior reflected in the statements was far less serious than his conduct underlying the charged offenses. There was no improper injection of considerations extraneous to the merits of the case. Even if there was unfair prejudice, it did not substantially outweigh the probative value of the evidence. See *Thorpe*, 504 Mich at 252 ("A decision on a close evidentiary question ordinarily cannot be an abuse of discretion.").

Even if the trial court abused its discretion by admitting the statements, defendant would still not be entitled to relief. "Under the harmless-error rule set forth in MCL 769.26, it is presumed that preserved, nonconstitutional error—such as evidentiary error—is harmless, and to overcome that presumption the appellant bears the burden of demonstrating, on the strength of the entire record, 'that it is more probable than not that the error was outcome determinative.' " *Propp*, 340 Mich App at 661-662. Defendant has failed to rebut the presumption of harmlessness as there was overwhelming evidence of guilt: (1) DNA evidence indicated that defendant's blood was on Rory's front door and underneath Rory's fingernails; (2) testimony of Rory's neighbors and video surveillance from a nearby gas station indicated that defendant was near the crime scene on the date at issue; and (3) when he was arrested three days after the murder, defendant had cuts on his hands consistent with an attempt by Rory to defend himself, and defendant's pocket contained Rory's cellular telephone. Thus, on the strength of the entire record, defendant has failed to demonstrate that it is more likely than not that the alleged evidentiary error was outcome-determinative. See *id*.

Defendant further argues that his state and federal constitutional rights of confrontation were violated by the admission into evidence of Rory's verified addendum in support of the petition for PPO. We disagree.

"Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront the witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009), citing US Const, Am VI, and Const 1963, art 1, § 20. "To preserve this right, testimonial hearsay is inadmissible against a criminal defendant unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant." *Garland*, 286 Mich App at 10, citing *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "However, if the hearsay is nontestimonial, the Confrontation Clause does not restrict state law from determining admissibility." *Garland*, 286 Mich App at 10.

Statements taken by police officers during interrogations are generally considered testimonial. *Crawford*, 541 US at 52. The United States Supreme Court has further clarified:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. [*Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).]

In addition, "there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Ohio v Clark*, 576 US 237, 245; 135 S Ct 2173; 192 L Ed 2d 306 (2015) (quotation marks and citation omitted). "In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Id*. (quotation marks, brackets, and citation omitted).

Rory's verified addendum in support of the petition for a PPO was not testimonial. The primary purpose of giving the statements in the verified addendum was *not* to establish or prove past events potentially relevant to a later criminal prosecution. Rather, the purpose of the verified addendum was to meet an ongoing emergency, i.e., convince a family court to issue a PPO to end a threatening situation created by defendant. Moreover, there was no police interrogation or other law enforcement involvement at this stage. In sum, no basis exists to conclude that the primary purpose of the verified addendum was to create an out-of-court substitute for trial testimony. Hence, because the statements contained in the verified addendum were not testimonial, defendant was not denied his constitutional rights of confrontation.

### III. VIDEO SURVEILLANCE

Defendant next argues that he was denied due process because of the failure of the police to preserve a neighbor's video surveillance system or to disclose its existence to the defense. We disagree.

A.  STANDARD OF REVIEW

Whether defendant was denied due process presents a constitutional question, which is reviewed de novo. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010).

B.  ANALYSIS

"To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a 'defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith.' " *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017), quoting *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). "When the evidence is only 'potentially useful,' a failure to preserve the evidence does not amount to a due-process violation unless a defendant establishes bad faith." *Dickinson*, 321 Mich App at 16, quoting *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). The defendant has " 'the burden of showing that the evidence was exculpatory or that the police acted in bad faith.' " *Dickinson*, 321 Mich App at 16, quoting *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). Bad faith exists when the police act maliciously, *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012), or engage in gamesmanship or a deliberate attempt to conceal evidence. *People v Greenfield*, 271 Mich App 442, 454 n 9; 722 NW2d 254 (2006). Mere negligence on the part of the police does not amount to bad faith. *Youngblood*, 488 US at 58.

Moreover, "[a] prosecutor is not required to seek and find exculpatory evidence or assist in building the defendant's case . . . ." *Dickinson*, 321 Mich App at 16 (quotation marks and citation omitted); see also *Heft*, 299 Mich App at 79 (quotation marks and citation omitted) (stating that the prosecutor "is not required to undertake discovery on behalf of a defendant."). Similarly, the prosecutor does not have "a constitutional duty routinely to deliver [the prosecutor's] entire file to defense counsel." *Youngblood*, 488 US at 55 (quotation marks and citation omitted).

Defendant contends that the prosecution acted in bad faith when it failed to disclose to the defense the collection, examination, and return of the neighbor's DVR box, and otherwise failed to preserve the DVR box or its contents.[4] However, there is no evidence of bad faith and no basis exists to conclude that the police acted maliciously, engaged in gamesmanship, or made a deliberate attempt to conceal evidence. Rather, law enforcement merely pursued an investigative avenue that ultimately led to a dead end. The police collected the DVR box to determine if it contained surveillance video footage from the time period of the murder. The DVR box was provided to a police video expert, Detroit Police Sergeant Steve Ford, who determined that it contained no recorded video footage from the time of the murder or for a substantial period of time before it. The DVR box was then returned to its owner.

Defendant contends that the police should have preserved the DVR box or its contents and informed the defense about the extraction efforts through formal police reports. Again, however,

---

[4] Defendant does not argue that the DVR box or its contents were actually exculpatory, nor does the record contain any support for such an argument. Rather, defendant contends that the DVR box or its contents constituted *potentially* useful evidence and that the police acted in bad faith. This is insufficient. See *Dickinson*, 321 Mich App at 16.

Sergeant Ford, an expert in video extraction, determined that the device contained no video from around the time of the murder. Although the police could have followed the practice defendant suggests, it was not constitutionally mandated. The prosecutor is not constitutionally required to "make a complete and detailed accounting to the defense of all police investigatory work on a case." *Youngblood*, 488 US at 55 (quotation marks and citation omitted). The video extraction effort did not yield any evidence, exculpatory or otherwise, and there was, therefore, no constitutional duty to tell the defense about it.

Defendant also argues that, if the DVR box had been preserved, the defense could have examined it to determine if it contained other recordings from earlier time periods to show that defendant was living at Rory's house with his consent and was entering and exiting the house normally using a key to the doors. But there is no evidence that any such recordings existed or that law enforcement acted in bad faith by failing to preserve any such recordings. In examining the DVR device, the police understandably were focused on determining if the device contained video from around the time of the murder. There is no indication that law enforcement knew that earlier time periods would be relevant to a defense theory or that they acted in bad faith by failing to preserve the DVR box. Accordingly, defendant is not entitled to relief.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that he was denied the effective assistance of counsel because his attorney: (1) failed to move to suppress Rory's iPhone; (2) did not adequately advise defendant concerning testifying at trial; and (3) failed to obtain the neighbor's video surveillance footage. We disagree.

### A. STANDARDS OF REVIEW

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*.

### B. ANALYSIS

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A

"defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## 1. MOTION TO SUPPRESS

First, defendant argues that defense counsel was ineffective for failing to file a motion to suppress Rory's iPhone, which was recovered from defendant's person during his arrest. Defendant contends that the iPhone constituted the fruit of the poisonous tree because the police lacked probable cause for his warrantless arrest.

"Both the United States and the Michigan Constitutions protect persons against unreasonable searches and seizures." *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014), citing US Const, Am IV, and Const 1963, art 1, § 11.

> A custodial arrest based on probable cause is not an unreasonable intrusion under the Fourth Amendment. An arresting officer, or collectively the officers involved in an investigation ("the police team" approach), must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant has committed it. In reviewing a claim that the police lacked probable cause to arrest, this Court must determine whether facts available at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity. Circumstantial evidence, coupled with those inferences arising therefrom, is sufficient to establish probable cause. [*Nguyen*, 305 Mich App at 751-752 (quotation marks, ellipsis, and citations omitted).]

Defendant was arrested on January 14, 2019, three days after the murder. By that time, law enforcement knew that Rory had been murdered in his home by multiple gunshots. Schutter, Kevin, and Jessica had informed the police about defendant's violent and threatening behavior toward Rory, and the police were aware that Rory obtained a PPO against defendant and that defendant had repeatedly violated the PPO. The police also knew that Rory's neighbors had seen defendant outside Rory's house multiple times during the 24 hours surrounding the murder. The evidence known to the police was enough to establish "a probability or substantial chance" that defendant had engaged in criminal activity; "an actual showing" that defendant engaged in criminal activity was not required in order to establish probable cause to arrest him. *Id*. at 752. Accordingly, the arrest was lawful, and a motion to suppress the iPhone recovered from defendant's person during the arrest would therefore have failed. Defense counsel was not ineffective for failing to file a futile motion. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## 2. DEFENDANT'S FAILURE TO TESTIFY AT TRIAL

Next, defendant argues that defense counsel was ineffective for failing to prepare and present defendant's testimony at trial and for failing to present evidence corroborating defendant's testimony. We disagree.

Initially, it is noted that defendant's current claim that he wanted to testify at trial differs from what he stated under oath at trial. After the prosecution rested, defendant was placed under oath outside the presence of the jury. Defendant testified that he and his trial counsel, Schlaff, had talked about his defense and about whether he should testify. Defendant stated that he had decided not to testify after speaking with Schlaff. Defendant agreed that Schlaff had advised defendant of his absolute right to testify, that Schlaff did not make any promises or force defendant not to testify, and that it was defendant's own decision not to testify.

To the extent defendant now claims that Schlaff was ineffective for advising defendant not to testify, defendant's argument fails. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted). "[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

At the *Ginther* hearing, Schlaff testified that, during their pretrial meetings, he and defendant discussed whether defendant should testify; defendant stated he "was not interested in testifying." According to Schlaff, defendant "seemed to be pretty adamant about" not wanting to testify. Schlaff stated he did not tell defendant before trial whether he should testify because he generally advises his clients to wait and see how the case goes before making a final decision about testifying. Concerning Rory's iPhone, defendant told Schlaff that he had accidentally picked up the phone. Schlaff did not believe that any purported similarity between Rory's phone and defendant's phone was of any significance because phones become very personal. Hence, as a strategic matter, Schlaff determined that defendant's assertion that he had accidentally grabbed Rory's phone was not likely to be a successful defense.

Schlaff also testified that, about halfway through trial, he and defendant again discussed whether defendant should testify. Schlaff thought there were too many issues that came out during trial about which the prosecutor would have cross-examined defendant and that those issues might have "complicated things" for the defense. Schlaff related that if defendant had testified, he could have been impeached on cross-examination with some of his criminal history and prior bad acts he had committed, including a 2018 retail fraud conviction. Schlaff stated he left the decision whether to testify up to defendant, but advised that he did not think defendant "would get much out of" testifying. Instead, Schlaff's trial strategy was to raise reasonable doubt by calling into question the testimony of the prosecution witnesses.

There is no basis to question Schlaff's strategic assessment that defendant should not testify, given the risks of cross-examination and the fact that defendant's convoluted explanation for how he came to be in possession of Rory's iPhone would likely not be credible to the jury. Nor is there any reason to second-guess Schlaff's failure to present other evidence, such as phone records, because Rory's iPhone and defendant's iPhone were not identical; defendant's iPhone was "a little bit bigger," as defendant conceded in his *Ginther* hearing testimony.

In addition, defendant testified at the *Ginther* hearing that he was not in the vicinity of Rory's house for three days encompassing the date of the murder. If defendant had testified to that effect at trial, he would have likely faced cross-examination about how his testimony was

inconsistent with DNA evidence, testimony of Rory's neighbors who saw defendant outside Rory's house, and video surveillance footage from a nearby gas station. Overall, defendant has failed to establish that Schlaff was ineffective in his advice regarding whether to testify.

## 3. VIDEO SURVEILLANCE

Defendant next contends that defense counsel was ineffective in failing to discover the neighbor's video surveillance system during an independent defense investigation or to ask for an adverse-inference instruction if the system no longer existed. Defendant is not entitled to relief on the basis of this argument.

As already explained, Sergeant Ford testified that the DVR box did not contain any recorded video footage from the time period of the murder. Defendant provides nothing but speculation that the DVR box *might* have contained video footage favorable to the defense. Contrary to defendant's argument, he would not have been entitled to an adverse-inference instruction on the basis of the failure of the police to preserve the DVR box or its contents. Unlike in *People v Anstey*, 476 Mich 436, 450; 719 NW2d 579 (2006), which defendant cites, the police here did not violate a statutory duty by failing to preserve the DVR box, which is what was determined in *Anstey* to warrant an instruction to the jury. Overall, defendant is unable to demonstrate a reasonable probability of a different outcome but for the failure of defense counsel to discover the video surveillance system or to ask for an adverse-inference instruction, and defendant was not denied the effective assistance of counsel.

## V. CUMULATIVE ERROR

Defendant also argues that he was denied a fair trial on the basis of the cumulative effect of multiple errors. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). In the present case, defendant has not established the existence of any errors. Hence, there is no cumulative effect of errors meriting reversal. See *id*.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood